In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY WITH REGARD TO A PROPOSED PETITION FOR AN AMENDMENT TO THE CONSTITUTION OF THE STATE OF COLORADO ADDING SUBSECTION (10) TO SECTION 20 OF ARTICLE X (AMEND TABOR 25).

Cletus E. Byrne, Jr. and Sherman S. Saeger, Petitioners/Cross–Respondents,

and

Douglas Bruce and Clyde Harkins, Respondents/Cross–Petitioners,

and

Title Board: Victoria Buckley, Stephen ErkenBrack, and Rebecca Lennahan, as members of said Title Board, Respondents.

No. 95SA192.

Supreme Court of Colorado, En Banc.

July 19, 1995.

122

Susan E. Burch, Denver, for petitioners.

Douglas Bruce, Clyde Harkins, Colorado Springs, pro se.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Maurice G. Knaiser, Deputy Atty. Gen., General Legal Services Section, Denver, for Title Bd.

Justice SCOTT delivered the Opinion of the Court.

The petitioners, as registered electors of the State of Colorado, bring this original proceeding pursuant to section 1–40–107(2), 1B C.R.S. (1994 Supp.), to review the actions of the initiative title setting board ("Title Board" or "Board") in setting the title, ballot title and submission clause, and summary for a proposed constitutional amendment by citizen initiative. The initiative, designated "Amend TABOR 25" (the "Initiative"), pro-

poses to add a new subsection (10) to article X, section 20,[1] of the Colorado Constitution.

Pursuant to section 1–40–106(1), 1B C.R.S. (1994 Supp.),[2] on May 17, 1995, the Title Board fixed a title, ballot title and submission clause, and summary for the Initiative.[3] Petitioners argue that the Board's actions should be set aside because: (1) the Board was improperly constituted and did not have jurisdiction to act on the proposal; (2) the Initiative contains more than one subject in violation of Article V, section 1(5.5) of our state constitution; and (3) that the title, ballot title and submission clause, and summary fail to conform to the requirements set forth in section 1–40–106(3), 1B C.R.S. (1994 Supp.).[4] Our review of the record in this matter causes us to conclude that the Board was duly constituted and authorized to act, but that the Initiative does not meet the single subject requirement applicable to initiatives under article V, section 1(5.5).[5] Ac-

cordingly, we reverse the action of the Title Board. Moreover, because the Board should not set a title and summary when an initiative encompasses more than a single subject, we need not determine and decline to discuss whether the title, ballot title and submission clause, and summary conform to the requirements of section 1–40–106(3).

## I

The petitioners contend that the secretary of state and the attorney general lack the authority to delegate to others their statutory duty to serve on the Title Board. Petitioners argue, therefore, that the Board was improperly constituted because the deputy attorney general, and not the attorney general, attended the Title Board hearing and because the secretary of state appointed a deputy who served as a member of the Board

---

1. Section 20 of Article X of the Colorado Constitution, titled the Taxpayer's Bill of Rights ("TABOR"), is also commonly known as Amendment 1. Amendment 1 was adopted by the electorate to "protect citizens from unwarranted tax increases." *Submission of Interrogatories on Senate Bill 93–74*, 852 P.2d 1, 4 (Colo.1993). Amendment 1 accomplishes its purpose by limiting the spending and taxing authority of state and local governments by requiring voter approval of certain *tax and spending increases. Bickel v. City of Boulder*, 885 P.2d 215, 225 (Colo.1994).

2. Section 1–40–106(1) provides, in part:

   For statewide ballot issues ... the secretary of state shall convene a title board consisting of the secretary of state, the attorney general and the director of the office of legislative legal services or the director's designee. The title board, by majority vote, shall proceed to designate and fix a proper fair title for each proposed ... constitutional amendment, together with a submission clause....

3. Under the title "Revenue Changes," the Initiative sets forth in several subsections the following:

   (a) Any *state or local sales or use tax* shall exempt telephone use, half at once and the rest in one year. A $40 tax credit, to increase $40 or more yearly above its level the year before, shall uniformly apply to each state income tax return, *specific ownership tax, and business personal property schedule* total tax due in each year. No such credit shall exceed the tax due. The state shall replace quarterly these revenue impacts on local districts.

   (b) Tax or revenue increase ballot titles shall state as a fixed number only the specific dollar amount of increase in spending limits. Each new tax, tax rate or mill levy increase, ratio increase, or extension rate of an *expiring tax* shall be stated in a tax increase ballot title as a fixed number only. Voter approval shall be valid only for fixed numbers so stated. All subsection (4)(a) issues are tax increases and shall require tax increase ballot titles. A tax increase *shall be a separate ballot issue from* bonded debt.

   (c) Future tax or revenue increases shall expire within 10 years of voter approval. Ballot issues affecting district revenue shall be voted on only at any subsection (3)(a) election date. *Applying to any district the circulation periods and minimum signature formula for state initiatives, citizens shall be able to initiate petitions affecting district revenue.*

   (d) In (10), "shall" means mandatory. In future suits filed at any time, violations of section 20 involving tax or revenue increases shall not be balanced or harmonized, nor excused by substantial compliance or good faith, but shall void illegal ballot issues and require strictest scrutiny and full enforcement of these fundamental taxpayer rights.

4. Section 1–40–106(3) provides, in part: "The title board for statewide ballot issues shall prepare a clear, concise summary of the proposed law or constitutional amendment."

5. Respondents Douglas Bruce and Clyde Harkins have filed a cross-petition in this matter. However, because of our rulings today we do not reach the issues raised by cross-petitioners.

instead of the secretary of state. We disagree.

■ Section 1–40–106(1), 1B C.R.S. (1994 Supp.), directs the secretary of state to "convene a title board consisting of the secretary of state, the attorney general, and the director of the office of legislative legal services or the director's designee." Although the statute does not expressly authorize the attorney general and the secretary of state to delegate their authority and duties, no language appears in the statute prohibiting such delegation. Under other statutory provisions, however, both the attorney general and the secretary of state are empowered to delegate their authority to duly designated deputies. Section 24–21–105, 10A C.R.S. (1988), provides for the designation of a deputy to act on behalf of the secretary of state: "The secretary of state may appoint a deputy to act for him if he deems it necessary, who shall have *full authority to act in all things relating to the office.* The secretary shall be responsible for all acts of such deputy." (Emphasis added.) Similarly, section 24–31–103, 10A C.R.S. (1988), permits the delegation of authority by the attorney general to a deputy attorney general: "The attorney general is hereby authorized to appoint a deputy, who shall have *authority to act for the attorney general in all matters* except in respect to such duties as devolve upon the attorney general by virtue of the constitution." (Emphasis added.) The only limitation placed on the delegation of duties by either the secretary of state or the attorney general is a prohibition against the attorney general delegating any of his or her constitutional duties. However, this limitation is not applicable here because participation of the attorney general as a member of the Title Board is imposed by statute, section 1–40–106(1), and Board participation is not a duty set forth in our constitution. *In re Title, Ballot Title and Submission Clause on Petition Procedures,* 900 P.2d 104, 108 (Colo.1995).

The attorney general and secretary of state may properly appoint deputies to act in their stead because the language of section 1–40–106(1) does not prohibit the participation of such deputies. Hence, we find that

the Title Board was duly constituted to act and that as such it has jurisdiction over title setting and related matters when a deputy attorney general or deputy secretary of state serves as a member of the Board in place of the attorney general or secretary of state.

## II

The petitioners next contend that the Initiative contains more than one subject in violation of Article V, section 1(5.5) of the Colorado Constitution. We agree.

## A

Article V, section 1 of the Colorado Constitution reserves to registered electors the right to initiate constitutional amendments. In the November 1994 general election, however, the voters adopted "Referendum A" which added a new requirement to the constitutional provisions governing proposed initiatives in section 1 of article V, providing at section 1(5.5):

> No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so expressed. If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls....

Colo. Const. art. V, § 1(5.5); *see* Senate Concurrent Resolution 93–4, 1993 Colo.Sess. Laws 2152; *In re Title, Ballot Title and Submission Clause on Petition Procedures,* at 107.

■ In response, the General Assembly enacted section 1–40–106.5, 1B C.R.S. (1994 Supp.), a statute "setting forth the legislative declaration regarding the single-subject requirements for initiated measures...." *Id.,* at 107. The General Assembly explained that the purpose of the single subject requirement of article V, section 1(5.5) is to prohibit the practice of putting together in one measure subjects having "no necessary

or proper connection," for the purposes of garnering support for measures from parties who might otherwise stand in opposition. § 1–40–106.5(1)(e)(I). In addition, the requirement seeks to prevent surreptitious measures, surprise and fraud upon the voters. § 1–40–106.5(1)(e)(II).

"In order to aid the electors in the exercise of the right to initiate constitutional amendments, the Board has the duty to designate and fix a title, ballot title and submission clause, and a summary for initiated petitions before they are signed by electors." *In re Title, Ballot Title and Submission Clause on Petition Procedures,* at 107–08 (citing *In re Proposed Initiative on School Pilot Program,* 874 P.2d 1066, 1069 (Colo.1994)). In setting titles for initiatives, the Board is directed to "apply judicial decisions construing the constitutional single-subject requirement for bills," and is advised to "follow the same rules employed by the general assembly in considering titles for bills." § 1–40–106.5(3).

■ Our scope of review of the Board's exercise of its discretion is limited. The General Assembly has directed that the single subject and title requirements for initiatives be liberally construed, "so as to avert the practices against which they are aimed and, at the same time, to preserve and protect the right of initiative and referendum." § 1–40–106.5(2).

■ This court has historically found, in review of the single subject requirement for bills, that a bill contains more than one subject if the text of the measure relates to more than one subject and has at least two distinct and separate purposes which are not dependent upon or connected with each other. *People ex rel. Elder v. Sours,* 31 Colo. 369, 405, 74 P. 167, 178 (1903). Hence, so long as the matters encompassed are necessarily or properly connected to each other rather than disconnected or incongruous, the single subject requirement is not violated. *Parrish v. Lamm,* 758 P.2d 1356, 1362 (Colo.1988).

B

The proponents of the Initiative, respondents and cross-petitioners before us, claim that the proposed measure comprises a single subject, "government revenue changes." The proponents argue that the purpose of the proposal is to reform the revenue raising process, a single subject stated in the title as "Revenue Changes." Respondents' arguments are not persuasive.

■ Under the umbrella of "revenue changes," the Initiative proposes to establish a $40 tax credit under section 10(a), and, in addition, sets forth several procedural requirements for *future* ballot titles in sections 10(b) and (c)—two unconnected purposes. As we recently held, the single subject requirement is not met when the text of the measure relates to more than one subject or the Initiative has "two distinct and separate purposes which are not dependent upon or connected with each other." *In re Matter of Ballot Title "Public Rights in Waters II",* 898 P.2d 1076, 1078–79 (Colo.1995). Because the proposed $40 tax credit is not "dependent upon or connected" to procedures for adopting future initiatives, we find the very evils that the electorate determined must be avoided by adoption of article V, section 1(5.5) are present here.

Through the passage of article V, section 1(5.5), voters took affirmative action to eliminate the practice of combining several unrelated subjects in a single measure for the purpose of enlisting support from advocates of each subject and thus securing the enactment of measures which might not otherwise be approved by voters on the basis of the merits of discrete measures. *In re Title, Ballot Title and Submission Clause on Petition Procedures,* at 1079. Hence, even applying the liberal standards of review set forth by this court for the consideration of the single subject requirement for bills, the Initiative fails to meet the standards of the single subject requirement.

Because we do not recognize a necessary or proper connection between the establishment of specific tax credits and the amendment of procedures relating to future voter initiatives, petitioners' claims must prevail. As presented here, the common characteristic of "revenue" attributable to both subjects cannot cure the Initiative's defects, nor can

it, in reality, make the nature of the Initiative such that it constitutes a single subject. *See In re Matter of Ballot Title "Public Rights in Waters II"*, at 1079.

### C

 Finally, the Title Board asserts that the Initiative properly constitutes a single subject because it proposes an amendment to an already existing constitutional provision, Amendment 1. The Board argues that Amendment 1 is a single issue measure, and reasons that because the Initiative seeks to clarify the limits placed by Amendment 1 on the ability of the legislature to spend and raise revenues, it too is a single issue measure. We find the Board's argument unpersuasive.

The Legislative Council's Analysis of 1994 Ballot Proposals, Research Publication No. 392 at 3, identified Amendment 1 as a ballot proposal which probably includes more than one subject and which, under the single subject requirement of article V, section 1(5.5), "might not have been permitted unless [it was] changed to reduce its scope." By the passage of Referendum A, the people in 1994 sought to avoid future constitutional provisions that are too broad so as to touch upon several matters—what the proponents now attempt to do. Amendment 1 itself was not subject to the single subject requirement and contains multiple subjects.

### III

In sum we conclude that by combining a specific tax credit proposal along with procedural changes for all future ballot title initiative measures, the Initiative seeks to accomplish more than a single purpose. Those purposes, i.e., the $40 tax credit and future initiative procedural measures, are furthermore not connected to each other; therefore, the Initiative does not meet the single subject requirement set forth in article V, section 1(5.5) of the Colorado Constitution. Moreover, because this infirmity is not cured by the fact that the Initiative proposes amendments to an existing constitutional provision, Amendment 1, we find that the Title Board erred in setting the title, ballot title and submission clause, and summary for the Initiative. Accordingly, we reverse the action of the Title Board and remand this matter to the Board with directions to strike the title, ballot title and submission clause, and summary, and to return the Initiative to its proponents.