In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE FOR PROPOSED INITIATIVE 2001–02 # 43.

George Jones; and Mark G. Grueskin, Registered Elector of the State of Colorado, Petitioners,

v.

Dennis Polhill and Douglas Campbell, Proponents, Respondents,

and

William Hobbs, Alan J. Gilbert, and Charles W. Pike, Title Board.

In the Matter of the Title, Ballot Title and Submission Clause for Proposed Initiative 2001–02 # 45.

Dennis Polhill and Douglas Campbell, Proponents, Petitioners,

v.

William Hobbs, Alan J. Gilbert, and Charles W. Pike, Respondents and Title Board.

Nos. 02SA50, 02SA52, 02SA71.

Supreme Court of Colorado, En Banc.

April 8, 2002.

George Jones, pro se, Arvada, CO, Petitioner in Case No. 02SA50.

Isaacson, Rosebaum, Woods & Levy, P.c., Mark G. Grueskin, Denver, CO, Attorneys for Petitioner in Case No. 02SA52.

Ken Salazar, Attorney General, Maurice G. Knaizer, Deputy Attorney general, Public Officials, State Services Section, Denver, CO, Attorneys for Title Board.

Dennis Polhill, pro se, Douglas Campbell, pro se, Arvada, CO.

Justice RICE delivered the Opinion of the Court.

In Case No. 02SA50 and Case No. 02SA52, Petitioners, George R. Jones and Mark G. Grueskin, brought original proceedings pursuant to section 1–40–107(2), 1 C.R.S. (2001), to challenge the action of the Ballot Title Setting Board ("Title Board") in setting the title and ballot title and submission clause ("titles") for proposed Initiative 2001–2002 # 43 ("# 43").[1]  Petitioners contend that the Title Board lacked jurisdiction to set the titles because # 43 contains multiple subjects in violation of article V, section 1(5.5) of the Colorado Constitution and section 1–40–106.5, 1 C.R.S. (2001).  In the alternative, Petitioners argue that the title and submission clause do not comply with section 1–40–106(3)(b), 1 C.R.S. (2001), because they are unclear and do not fairly express the true meaning and intent of # 43.  We will refer to Mr. Grueskin and Mr. Jones as the objectors.

In Case No. 02SA71, Petitioners, Douglas Campbell and Dennis Polhill, brought an original proceeding pursuant to section 1–40–107(2) to challenge the action of the Title Board in refusing to set the titles for pro-

---

1.  The text of # 43 is attached as APPENDIX A.    The titles are attached as APPENDIX B.

posed Initiative 2001–2002 # 45 ("# 45").[2] The Title Board concluded that it lacked jurisdiction to set titles for # 45 because it contains multiple subjects in violation of article V, section 1(5.5) of the Colorado Constitution and section 1–40–106.5. Petitioners claim that # 45 contains only one subject. We will refer to Mr. Campbell and Mr. Polhill as the proponents.

Mr. Campbell and Mr. Polhill are the proponents of both # 43 and # 45. Both # 43 and # 45 would add a new section, entitled "Petitions," to article VII of the Colorado Constitution. These initiatives are virtually identical; we therefore consolidate these cases for review in this court.

We conclude that both # 43 and # 45 contain multiple subjects in violation of article V, section 1(5.5) of the Colorado Constitution. Accordingly, in # 43, we reverse the action of the Title Board and remand this matter to it with directions to strike the titles and return the initiative to the proponents. Because we conclude that # 43 contains multiple subjects, we do not consider whether the titles set by the Title Board conform to the requirements of section 1–40–106(3), 1 C.R.S. (2001). *In re Proposed Initiative for 1997–98 # 64*, 960 P.2d 1192, 1196 (Colo.1998) ("Because we conclude that the Initiative contains multiple subjects, we do not address the argument that the titles and summary are misleading."); *see also, In re Proposed Initiative for 1997–98 # 84*, 961 P.2d 456, 458 (Colo.1998); *In re Proposed Initiative Amend TABOR 25*, 900 P.2d 121, 123 (Colo.1995). In # 45, we affirm the action of the Title Board in refusing to set the titles.

## I.

■ For over one hundred years, the single subject requirement has been applied to bills introduced in the General Assembly. The rule appeared in our state's first constitution and is still there today: "No bill, except general appropriations bills, shall be passed containing more than one subject." Colo. Const. article V, § 21. Our exposition of this rule in three turn of the century cases remains as applicable today as it was then.

The single-subject requirement, we explained, prohibits a single legislative act from addressing "disconnected and incongruous measures," *In re Breene*, 14 Colo. 401, 404, 24 P. 3, 3 (1890) that have no "necessary or proper connection." *Catron v. Bd. of County Comm'rs*, 18 Colo. 553, 557, 33 P. 513, 514 (1893). This limitation serves to ensure that each legislative proposal depends upon its own merits for passage and protects against fraud and surprise occasioned by the inadvertent passage of a surreptitious provision "coiled up in the folds" of a complex bill. *In re Breene*, 14 Colo. at 404, 24 P. at 4. A bill comprises multiple subjects if it has "at least two distinct purposes which are not dependent upon or connected with each other." *People ex rel. Elder v. Sours*, 31 Colo. 369, 403, 74 P. 167, 177 (1903).

Notwithstanding its venerable history in the halls of the General Assembly, it was not until 1994 that the single-subject requirement and its attendant jurisprudence were imported into the initiative process. In that year, the people of the State of Colorado approved Referendum A on the 1994 general election ballot. As a result, article V, section 1(5.5) was added to our constitution. It provides in relevant part:

> No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title. . . . If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls.

Colo. Const. art. V, § 1(5.5). Contingent upon the passage of this constitutional amendment, the General Assembly enacted legislation explaining the rationale for extending the single-subject requirement to initiated and referred measures. *See* § 1–40–106.5. Section 1–40–106.5 makes clear that cases interpreting the single-subject requirement in the context of legislative bills control the interpretation of the single-subject requirement in the context of initiatives and referendums:

---

**2.** The text of # 45 is attached as APPENDIX C.

(d) The Colorado supreme court has held that the constitutional single-subject requirement for bills was designed to prevent or inhibit various inappropriate or misleading practices that might otherwise occur, and the intent of the general assembly in referring to the people section 1(5.5) of article V ... was to protect initiated measures ... from similar practices;

(e) The practices intended by the general assembly to be inhibited by section 1(5.5) of article V ... are as follows:

(I) To forbid the treatment of incongruous subjects in the same measure, especially the practice of putting together in one measure subjects having no necessary or proper connection, for the purpose of enlisting support of the measure the advocates of each measure, and thus securing the enactment of measures that could not be carried upon their merits;

(II) To prevent surreptitious measures and apprise the people of the subject of each measure by the title, that is, to prevent surprise and fraud from being practiced upon voters.

(2) It is the intent of the general assembly that section 1(5.5) of article V ... be liberally construed, so as to avert the practices against which they are aimed and, at the same time, to preserve and protect the right of initiative and referendum.

(3) It is further the intent of the general assembly that, in setting titles pursuant to section 1(5.5) of article V, the initiative title setting review board created in section 1–40–106 should apply judicial decisions construing the constitutional single-subject requirement for bills and should follow the same rules employed by the general assembly in considering titles for bills.

§ 1–40–106.5.

Since 1995, "[m]indful of the legislative history which requires us to evaluate the single-subject ... mandate in initiatives in the same way that we evaluate single subjects ... in bills," we have relied upon the standards established in *Sours, Catron,* and *Breene* to determine whether proposed initiatives contain multiple subjects in violation of article V, section 1(5.5). *In re Proposed Initiative for 1999–2000 # 25,* 974 P.2d 458, 464 (Colo.1999). For instance, in *In re Proposed Initiative on "Public Rights in Water II",* 898 P.2d 1076 (Colo.1995), our first opportunity to interpret the new constitutional amendment, we relied heavily on the amendment itself, its explanatory legislation, and cases construing the single-subject requirement for bills. 898 P.2d at 1078–79. Accordingly, we summarized the purpose of the constitutional amendment as forbidding the joining of "incongruous subjects in the same measure" thereby ensuring that "each proposal depends on its own merits for passage." *Id.* at 1078 (internal quotation marks omitted). We explained that by preventing a single initiative from containing multiple subjects, article V, section 1(5.5) "would prevent proponents from engaging in 'log rolling' or 'Christmas tree' tactics" in which proponents attempt to garner support for their initiative from "various factions which may have different or even conflicting interests." *Id.* at 1079. We used the *Sours* test to determine whether the initiative ran afoul of the new amendment: "In order to constitute more than one subject ..., the text of the measure must relate to more than one subject and it must have at least two distinct and separate purposes which are not dependent upon or connected with each other." *Id.* at 1078–79; *accord In re Proposed Initiative for 1999–2000 # 104,* 987 P.2d 249, 253 (Colo.1999); *In re Proposed Initiative for 1997–98 # 30,* 959 P.2d 822, 825 (Colo.1998); *In re Amend TABOR 25,* 900 P.2d at 125. We adhere to this test today.

Pursuant to this test, we held that the initiative at issue in *Public Rights in Water II* contained multiple subjects. 898 P.2d at 1080. The initiative would have established election and boundary rules for water conservancy and conservation districts while also requiring effective enforcement and development of a "strong public trust doctrine." *Id.* We found that these two objectives evinced "[n]o necessary connection" but were "separate and discrete" and thus "must be accomplished through separate initiatives." *Id.*

It was of no moment that both subjects related to water: "The common characteristic that the paragraphs all involve 'water' is too general and too broad to constitute a

single subject." *Id.* Accordingly, we held that, "[b]ecause the Initiative seeks to accomplish more than one purpose, and the two purposes are not connected to each other, the Initiative violates the single subject provision of Article V, Section 1(5.5) of the Colorado Constitution." *Id.*

As *Public Rights in Water II* demonstrates, although an initiative that 'tends to effect or to carry out one general objective or purpose' does not violate article V, section 1(5.5), a proponent's attempt to characterize his initiative under some overarching theme will not save an initiatives containing separate and unconnected purposes. *See In re Proposed Initiative for 1999–2000 # 200A*, 992 P.2d 27, 30 (Colo.2000) ("An initiative does not satisfy the single-subject requirement if its provisions contain separate and unconnected purposes, despite the proponent's efforts to unite them under the same general area of the law."); *In re Proposed Initiative 1996–4*, 916 P.2d 528, 532 (Colo. 1996) ("Grouping the provisions of a proposed initiative under a broad concept that potentially misleads voters will not satisfy the single subject requirement.") In the face of such subterfuge, we have not hesitated to strike down initiatives that violate the single-subject requirement. There are two principal dangers attending these omnibus initiatives.

The first is the danger that measures, incapable of being enacted on their own merits, will nonetheless be passed because joining multiple subjects having no necessary or proper connection will secure the support of various factions that may have different or even conflicting interests. *See* § 1–40–106.5(1)(e)(I); *In re Proposed Initiative for 1997–98 # 30*, 959 P.2d at 825 ("One concern which led to voter enactment in 1994 of the multiple subject ban is that proponents would combine different proposals in the hopes of getting unrelated subjects passed by enlisting support for the entire initiative from advocates of the separate subjects— 'thereby securing the enactment of subjects that could not be enacted on their merits

alone.' " (quoting *In re Parental Choice on Education*, 917 P.2d 292, 294 (Colo.1996))). This was the practice we found to be prohibited in *Public Rights in Water II*. Another example, more directly on point, is *In re Proposed Initiative Amend TABOR 25*, 900 P.2d 121 (Colo.1995). In *Amend TABOR 25*, we concluded that the umbrella of "revenue changes" did not alter the fact that the measure contained two unrelated subjects, a tax credit and changes to the procedural requirements for ballot titles. *See also, e.g., In re Proposed Initiative for 1997–1998 # 64*, 960 P.2d 1192, 1200 (Colo.1998) ("If the entire judicial branch were regarded as a single subject, incongruous and disconnected provisions could be contained in a single initiative and the very practices the single subject requirement was intended to prevent would be facilitated.").

Furthermore, we held that this defect was not cured by the fact that the Initiative proposed amendments only to the Taxpayer's Bill of Rights ("TABOR"),[3] an already existing constitutional provision. TABOR, we reasoned, was itself "not subject to the single subject requirement and contains multiple subjects." 900 P.2d at 126. Therefore, it is still possible for an initiative seeking to amend only this constitutional provision to encompass more than one subject in violation of article V, section 1(5.5). *Id.; cf. In re Proposed Initiative 1996–4*, 916 P.2d at 533 ("If for example, a constitutional provision contains multiple subjects and an initiative proposes to repeal the entire underlying provision, then the initiative contains multiple subjects.").

The second danger associated with omnibus initiatives is the voter surprise and fraud occasioned by the inadvertent passage of a surreptitious provision "coiled up in the folds" of a complex initiative. *See* § 1–40–106.5(1)(e)(II); *Proposed Initiative for 1997–98 # 30*, 959 P.2d at 825 (noting that another purpose of the single-subject requirement is to obviate the risk of " 'uninformed voting caused by items concealed within a lengthy

---

**3.** Section 20 of Article X of the Colorado Constitution. TABOR is otherwise known as Amendment 1.

or complex proposal.'" (quoting *Public Rights in Water II*, 898 P.2d at 1079)).

*In re Proposed Initiative for 1997–98 # 84*, 961 P.2d 456 (Colo.1998) is representative of this latter category. There, the initiatives at issue proposed to lower various state and local taxes. *Id.* at 457. In addition, these initiatives required the state to replace the local revenue affected by these tax cuts "within all tax and spending limits." *Id.* at 459. This "within all tax and spending limits" provision effectively required the state to replace local revenues by diverting funding from existing state programs. *Id.* at 460. Thus, we concluded that "properly viewed" these initiatives did not encompass "a single definite object or purpose." *Id.* Instead, they included two separate and discrete subjects: tax cuts and the imposition of mandatory reductions in state spending on state programs. *Id.* "While requiring the state to replace affected local revenue in itself sufficiently relates to a tax cut, requiring the state separately to reduce its spending on state programs is not dependent upon and clearly related to the tax cut." *Id.* (internal quotation marks omitted). We reasoned:

> The dual constitutional changes which would be enacted by these initiatives are precisely the types of mischief which the single subject requirement was intended to prevent. Voters would be surprised to learn that by voting for local tax cuts, they also had required the reduction, and possible eventual elimination, of state programs. That type of hidden subject is not permitted under article V, section 1(5.5) of the Colorado Constitution. Accordingly, the initiatives are not constitutional.

*Id.* at 460–61 (internal footnotes and citations omitted); *see also In re Proposed Initiative for 1997–98 # 30*, 959 P.2d at 827 (holding that voter surprise or fraud would result if the initiative passed because voters could be enticed to vote for the measure in order to enact a substantial tax cut while not realizing that passage of the measure would simulta-neously achieve a purpose not necessarily related to a tax cut).

With these principles in mind we now consider whether # 43 and # 45 violate the single subject requirement.

## II.

■ Our role is limited. We may not address the merits of a proposed initiative or suggest how an initiative might be applied if enacted; however, we must sufficiently examine an initiative to determine whether or not the constitutional prohibition against initiative proposals containing multiple subjects has been violated. *In re Proposed Initiative for 1997–98 # 30*, 959 P.2d at 825; *accord In re Proposed Initiative for 1999–2000 # 29*, 972 P.2d 257, 260 (Colo.1999).

Twice before, this court has passed upon similar initiatives introduced by these proponents. *See In re Proposed Initiative Petitions*, 907 P.2d 586 (Colo.1995); *In re Proposed Initiative Petition Procedures*, 900 P.2d 104 (Colo.1995). In the earlier case, we held that the initiative contained multiple subjects. *Petition Procedures*, 900 P.2d at 109. In the later case, we held that the initiative contained only one subject.

*Petitions*, 907 P.2d at 590. There are provisions in # 43 and # 45 that are either identical or virtually identical[4] to those held to constitute a single subject in *Petitions*. With respect to these provisions therefore, it would be disingenuous to depart from the rule of stare decisis and we decline objectors' invitation to do so. *See In re Proposed Initiative for 1999–2000 # 29*, 972 P.2d at 262–63 (reasoning that although the rule of stare decisis is not an inflexible or immutable rule, "we will not depart from prior rulings 'for slight or trivial causes, and certainly not where such departure would promote injustice or defeat justice'" (quoting *Creacy v. Industrial Comm'n*, 148 Colo. 429, 433, 366 P.2d 384, 386 (1961))).

---

4. For instance, whereas the initiative at issue in *Petitions* permitted no more than nine legislative measures to be excepted from possible referendum petitions, # 43 and # 45 permit up to ten to be excepted. Other examples of virtually identical provisions are changes that reduce the maximum number of words allowed in a ballot title from one hundred to seventy-five or reduce the time in which the supreme court must decide a single-subject challenge from twenty-one days to fourteen days.

■ We described the initiative at issue in *Petitions* as "establishing a battery of procedures which govern the exercise" of the right to petition. These included:

> [V]arious time limitations; guidelines for formatting and filing petitions; procedures for challenging ballot titles and petitions on single-subject grounds; and rules regarding printing, distribution, and format of petition forms. The Initiative prohibits limitation of peaceful petition petitioning on public, district owned property; limits the number of legislative measures which may be excepted from referendum petitions; describes certain procedures related to the exception process; and provides guidelines for distribution to voters of information regarding petitions. It also defines certain terms used in the Initiative, expresses general guidelines for interpretation of petitions, and authorizes lawsuits as a remedy for violations of the proposed provisions. The provisions regarding lawsuits authorize recovery of court costs and attorney fees by successful plaintiffs and by defendants who establish that lawsuits are frivolous.

907 P.2d at 591. These provisions, we held, constituted "a single, if quite general, subject." *Id.* at 590. Thus, to the extent that # 43 and # 45 establish "a battery of procedures" governing the exercise of the right to petition, our decision in *Petitions* is binding, and these procedural provisions comprise but one subject.

Not only does this include provisions in # 43 and # 45 that are either identical or virtually identical to the provisions listed above, it also includes new provisions that unquestionably fall within this procedural category or that are so related to a provision listed above that no principled distinction could be made between them.

For example, # 43 and # 45 include a new provision requiring that "[a]ny review and comment hearing shall be held within 7 days of submission of an initiative draft." A provision such as this concerns how a citizen exercises his right to petition—in other words, the actual mechanics of how a proponent goes about placing an initiative on the ballot—and would obviously fall within the procedural category held to be a single subject in *Petitions*.

Similarly, a new provision in # 45 adds that, "The state shall enforce compliance by all districts." [5] In regards to whether this provision constitutes a separate subject, there is no principled distinction between it and the provision in *Petitions* authorizing aggrieved citizens to sue for a violation of the proposed initiative's provisions. Whether by the state or by a private citizen, these provisions serve to enforce the proposed initiative, and neither constitutes a separate subject. *See In re Proposed Initiative for 1999–2000 # 200A*, 992 P.2d at 30–32 (holding that implementation details and enforcement measures that are "directly tied to the initiative's central focus do not constitute a separate subject" (internal quotation marks omitted)); *see also In re Proposed Initiative for 1997–98 # 74*, 962 P.2d 927, 929 (Colo.1998) ("An initiative with a single, distinct purpose does not violate the single-subject requirement simply because it spells out details relating to its implementation. As long as the procedures specified have a necessary and proper relationship to the substance of the initiative, they are not a separate subject.").

These and other details of implementation and enforcement like them are "directly tied to the initiative's central focus" of liberalizing the process by which initiative and referendum petitions are placed on the ballot and therefore, pursuant to our decision in *Petitions*, do not constitute separate subjects.

However, # 43 and # 45 are intended to achieve three new objectives that were not present in the *Petitions* initiative. The inclusion of these additional objectives violates the single-subject requirement of article V, section 1(5.5) of the Colorado Constitution. The first addition seeks to modify the *content* of initiatives and referendums by eliminating the single-subject requirement such that, "Any petition adding, repealing, or rewriting within one article of the constitution, one title of state statutes, one charter article, or one ordinance is conclusively a single subject and

---

5. This sentence is not included in # 43.

not subject to appeal." [6]  The second addition excludes "voter-approved petitions already ruled by the supreme court to be multiple subjects" from the foregoing rule thus preventing the wholesale repeal of TABOR. The third addition prohibits "referendum petitions that reduce private property rights, such as zoning issues."  Each of these additional subjects is unrelated to the *process* by which initiative and referendum petitions are placed on the ballot—the central focus of the initiative.  Moreover, they are not mere implementation or enforcement details.  They are distinct substantive provisions.  Thus, the addition of these three unrelated and incongruous subject areas—the elimination of the single-subject rule, the constitutional prohibition on repealing TABOR in a single initiative, and the prohibition on referendum petitions that reduce private property rights—removes # 43 and # 45 from that line of cases in which we found a "a single, if quite general, subject," *Petitions*, 907 P.2d at 590, and places them into that line of cases in which we found separate and unconnected subjects despite the proponents' attempts to unite them under the same general area of the law.  *See e.g., In re Proposed Initiative for 1997–1998 # 64*, 960 P.2d at 1200 ("If the entire judicial branch were regarded as a single subject, incongruous and disconnected provisions could be contained in a single initiative and the very practices the single subject requirement was intended to prevent would be facilitated."); *In re Proposed Initiative 1996–4*, 916 P.2d at 532–33 (reasoning that the single subject requirement precludes provisions of a proposed initiative from being grouped under a broad concept that potentially misleads voters and holding that "[l]imiting government spending is too broad and general a concept to satisfy the single subject requirement"); *In re Proposed Initiative Amend TABOR 25*, 900 P.2d at 125 (concluding that umbrella of "revenue changes" did not alter the fact that the measure contained two subjects, tax credit and ballot title procedural requirements); *In re Proposed Initiative "Public Rights In Water II"*, 898 P.2d at 1080 (where two provisions merely have a common characteristic, such as water, such a connection is "too broad and too general" to make them part of the same subject).

## A. Elimination Of The Single Subject Requirement

■  # 43 provides that, "Any petition adding, repealing, or rewriting within only one article of the constitution, one title of state statutes, one charter article, or one ordinance is conclusively a single subject and not subject to appeal." [7]  At the hearing before the title board, the following colloquy occurred between a board member and one of the proponents with respect to this provision:

> Mr. Pike: [T]his again addresses a potential concern I have with respect to single-subject . . . you could draft a constitutional amendment as long as you put it all in one article, maybe a brand new article or an existing article, it would not matter what the contents are it would be a single subject.  Is that correct?
>
> Mr. Campbell: Well, I suppose that's correct.

To ensure that a proposed initiative complies with this single-subject requirement, the title board is required to make inquiries like Mr. Pike's, *see In re Proposed Initiative for 1999–2000 # 25*, 974 P.2d at 468–69, and it is permissible for us to take note of a proponent's responses thereto.  Thus, we do not overstep our bounds in observing that this provision eliminates the single-subject requirement.  *Cf. In re Proposed Initiative for 1997–98 # 84*, 961 P.2d at 460 n. 5; *In re Proposed Initiative for 1997–98 # 30*, 959 P.2d at 825 n. 2.[8]

---

**6.**  This quote is from # 43; # 45 is almost identical.  It provides that, "Any petition adding, repealing, or revising within only one article of the constitution, one title of state statutes, one charter article, or one ordinance is conclusively a single subject and not subject to appeal."

**7.**  As we have already noted, # 45 contains a virtually identical provision.

**8.**  William Hobbs, Chairman of the Title Board, noted that the "obvious" effect of this provision is to permit proponents to "disregard" or "easily get around" the single-subject requirement by drafting a measure that amends or adds a single article or title and thus "effectively repeals" the single-subject requirement.  Likewise, Mr. Pike concluded that this provision

Although the elimination of the single-subject requirement and procedural measures governing the process by which initiatives are placed on the ballot both relate to the initiative and referendum process, the former serves a separate and discrete purpose from the latter. The procedural measures govern *how* a proponent exercises his right to petition. The single-subject requirement, in contrast, controls *what* an initiative placed on the ballot may contain. The elimination of this requirement, therefore, fundamentally alters the permissible scope of measures placed before the voters for their approval or rejection. A voter of average intelligence would be quite surprised to find out that an initiative purporting to deal with procedural aspects of the right to petition drastically altered the substance of measures on the ballot.

■ Moreover, as we have discussed, the single-subject requirement developed independently of the initiative and referendum processes. Citizens of Colorado have enjoyed the right to initiate and pass constitutional amendments and laws since 1910, yet it was not until 1994 that the single-subject requirement was imported into this process by way of a referred constitutional amendment. Because the single-subject requirement serves a very different purpose than the procedures governing the right to petition, we reject Proponents' argument that article V, section 1(5.5) is satisfied because both concern the initiative and referendum process. "Grouping the provisions of a proposed initiative under a broad concept that potentially misleads voters will not satisfy the single subject requirement." *In re Proposed Initiative 1996–4*, 916 P.2d at 532; *see also In re Proposed Initiative for 1999–2000 # 200A*, 992 P.2d at 30; *In re Proposed Initiative for 1997–98 # 64*, 960 P.2d at 1200; *In re Proposed Initiative Amend TABOR 25*, 900 P.2d at 125; *Public Rights in Water II*, 898 P.2d at 1080.

It is ironic that in approving a seemingly innocuous initiative proposing to relax the procedural requirements for placing a measure on the ballot, voters may inadvertently nullify their only protection against the dangers of including incongruous measures in a single initiative—a protection on which they had insisted only eight years ago. William Hobbs, chairman of the Title Board aptly observed:

> I'm still troubled by the fact that [this provision] effectively repeals something that the voters have already approved. Somehow in my mind it goes kind of beyond just procedures or just expanding the situations where petitions can be used and so forth. It undoes something that has already been approved by the voters.... The general assembly gave us a list, "To avoid surprise and fraud, avoid surreptitious measures being buried within broader measures." This just strikes me as something that is buried.... I just don't think that normally that a measure that deals with petitioners' rights, one would normally think that that would include reversing the single-subject rule. Somehow that just stands out in my mind as going beyond what voters would expect in voting on a measure that relates to petitioners' rights.

We agree. The elimination of the single subject requirement constitutes an additional subject unrelated to the procedural requirements which must be satisfied to entitle a proponent to place his measure on the ballot. *Cf. In re Proposed Initiative Amend TABOR 25*, 900 P.2d at 125 (concluding that tax credit and procedural requirements for ballot titles constituted two separate subjects). It serves the discrete purpose of once again permitting incongruous provisions to be included within the same initiative thereby reversing a constitutional safeguard the voters felt was necessary less than ten years ago.

If the proponents wish to have the voters reconsider this rule, they are certainly entitled to do so. But first, they must comply with the present will of the voters and thus

---

effectively does away with the single-subject rule because, just as a matter of practice, if you are a proponent drafting a measure, you're insulated from a single-subject challenge as long as you put it all in one article.... Once

you do that, and anything that goes in one article cannot be challenged on single-subject grounds effectively the single-subject rule is eliminated for petitions that fall under this measure.

they must comply with article V, section 1(5.5). Obfuscating the repeal of such a fundamental requirement within the folds of a complex initiative purporting to deal only with the procedural right to petition violates this provision. In fact, it is precisely the type of ploy article V, section 1(5.5) was intended to protect against. It is not, however, the only violation.

### B. TABOR Exemption

■ # 43 and # 45 exempt "[v]oter approved petitions already ruled by the supreme court to be multiple subjects" from their rule that "[a]ny petition adding, repealing or rewriting [9] within only one article of the constitution, one title of state statues, one charter article, or one ordinance is conclusively a single subject and not subject to appeal." At the hearing before the Title Board for # 43, one of the proponents conceded that the intended effect of this provision is to prevent the repeal of TABOR.[10] Not only is this the epitome of a surreptitious measure, it is also intended to secure the support of various factions which may have different or even conflicting interests. Those voters in favor of repealing TABOR may vote for this initiative believing that it will permit just this. Only later will they discover that an obscure line in the initiative for which they voted exempts TABOR from the provision apparently permitting its repeal. *Cf. In re Proposed Initiative for 1997–98 # 84*, 961 P.2d at 460–61 ("Voters would be surprised to learn that by voting for local tax cuts, they also had required the reduction, and possible eventual elimination, of state programs. That type of hidden subject is not permitted under article V, section 1(5.5) of the Colorado

Constitution."); *In re Proposed Initiative for 1997–98 # 30*, 959 P.2d at 827 (finding that voter surprise or fraud would result if initiative passed because voters were enticed to vote for the measure in order to enact a substantial tax cut while not realizing that passage of the measure would simultaneously achieve a purpose not necessarily related to a tax cut). The single subject requirement was intended to prevent such "uninformed voting caused by items concealed within a lengthy or complex proposal."[11] *Public Rights in Water II*, 898 P.2d at 1079.

■ Moreover, an amendment to the Colorado Constitution which prevents the repeal of TABOR itself constitutes multiple subjects in violation of article V, section 1(5.5). TABOR contains multiple subjects. *In re Proposed Initiative Amend TABOR 25*, 900 P.2d at 126. If "a constitutional provision contains multiple subjects and an initiative proposes to repeal the entire underlying provision, then the initiative contains multiple subjects." 916 P.2d at 533. It follows that an initiative proposing to prevent the repeal of a constitutional provision containing multiple subjects also contains multiple subjects. Therefore, an initiative proposing to prevent the wholesale repeal of TABOR contains multiple subjects.

Each measure must depend on its own merits for passage. Therefore, if proponents wish to constitutionalize the rule that TABOR may not be repealed wholesale, they must do so by means of an initiative in which this is the single subject, not by the subterfuge they attempt here. Preventing the wholesale repeal of TABOR constitutes a second subject unrelated to the initiative's cen-

---

9. # 45 says "revising" instead of "rewriting."

10. While explaining the intent of this provision to the Title Board, Mr. Campbell had the following exchange with one of the board members:

> Mr. Campbell: Well, what the [Colorado Supreme Court] has said is that certain measures that have been passed, certain petitions that have already been voter approved, they are part of the constitution now, but the court has said that they were at the time they were passed multiple-subjects but there was no single-subject rule in effect at that time, so what we are saying here is that ... they cannot be

> construed to be a single-subject now for purposes of some other initiative that may want to change them.
> Mr. Pike: Is TABOR the example you have in mind or are there others?
> Mr. Campbell: That's one that leaps to the forefront, but there may be others.

11. We reject the board's argument that this provision is not surreptitious because it does not change the status quo. Under our precedent, it is indeed true that TABOR could not be repealed in a single measure. However, constitutionalizing this rule is an undeniable departure from present circumstances.

tral focus of liberalizing the process by which initiative and referendum petitions are placed on the ballot and thus a second violation of article V, section 1(5.5).

## C. Prohibition Of Referendums That Reduce Private Property Rights

■ The initiative excludes "referendum petitions that reduce private property rights, such as zoning issues," from the definition of "Petition." This provision, like all others in the initiative, "supersedes conflicting constitutional, statutory, charter, or other state or local laws." Thus, just as in the case of the elimination of the single subject requirement, and the proposed constitutional prohibition on the wholesale repeal of TABOR, voters would be surprised to learn that by voting for an initiative purporting to deal with the procedural aspects of the right to petition, they had excluded zoning matters that "reduce private property rights" from the right of referendum.

Moreover, we agree with the objectors that zoning matters are peculiarly a matter of local concern and that local citizens' rights of initiative and referendum can be an important part of this process. Article V, section 1(9) reserves the initiative and referendum powers to "the registered electors of every city, town, and municipality as to all local, special, and municipal legislation of every character in or for their respective municipalities." [12] In the context of zoning, "a heightened community sensitivity to the quality of the living environment and an increased skepticism of the judgment of elected officials provide much of the impetus for voters' exercise of the powers of referenda and initiative." *Margolis v. Dist. Court*, 638 P.2d 297, 303 (Colo.1981). Prohibiting municipal legislation from being referred to that city's registered electors when the success of such referendum would "reduce private property rights," represents a significant invasion of

this fundamental constitutional right. *See Margolis*, 638 P.2d at 302–03 (noting that the right of initiative and referendum are fundamental). For home-rule cities and towns, this invasion is even more disturbing given the "full right of self-government in both local and municipal matters" afforded them by article XX, section 6.[13] *Cf. In re Proposed Initiative for 1997–98 # 95*, 960 P.2d at 1209 ("To the extent that initiative # 95 would deprive home rule cities of [their power over the election, appointment, and retention of municipal court judges] we conclude that it furthers a purpose that is unrelated to the qualifications of judicial officers.") Accordingly, we hold that prohibiting referendum petitions that reduce private property rights constitutes a third subject unrelated to these initiatives' central focus of liberalizing the process by which initiatives and referendums are placed on the ballot. The inclusion of this provision therefore violates article V, section 1(5.5).

### III.

In sum, we conclude that there are at least four separate and unrelated purposes in # 43 and # 45: (1) the central purpose—to modify the process by which initiative and referendum petitions are placed on the ballot; (2) to modify the content of initiative and referendum petitions that are placed on the ballot; (3) to prevent the repeal of TABOR in a single initiative; and (4) to protect private property rights from the referendum process. Although each purpose is in some way related to the initiative or referendum process, there is no "necessary connection between them" and thus each "must be accomplished through separate initiatives." *Public Rights in Water II*, 898 P.2d at 1080. Therefore, we hold that both # 43 and # 45 violate article V, section 1(5.5). Accordingly, in No. 02SA50 and No. 02SA52, we reverse the Title

---

12. Article V, section 1(9) also permits cities, towns, and municipalities to provide for the manner of exercising the initiative and referendum powers as to their municipal legislation.

13. We note that this initiative also impacts the "exclusive power" given to the City and County of Denver over the way in which its charter is amended or adopted. *Cf. In re Proposed Initiative for 1997–98 # 64*, 960 P.2d at 1198 (stating that because reallocating governmental control or authority over Denver county court judgeships "does not share a unifying or common objective with those provisions changing the qualifications of judicial officers, we hold that this provision is ... inconsistent with the single subject requirement").

Board's action and remand this matter to it with direction to strike the titles and return Initiative # 43 to its proponents. In No. 02SA71, we affirm the action of the Title Board in refusing to set titles for Initiative # 45.

## APPENDIX A

### Be it Enacted by the People of the State of Colorado: Article VII, section 2 Petitions.

(1) **General provisions.** This section shall create fundamental rights and strengthen citizen control of government. It shall be self-executing and severable and supersede conflicting constitutional, statutory, charter, or other state or local laws. Time limits shall extend only to expire on a district business day. Citizen or class action suits shall be filed within one year of a violation. Plaintiffs may require a jury trial verdict on all matters or law, fact, and damages. Violations shall not void petitions. Violations shall not be balanced or harmonized, nor excused by substantial compliance, good faith, or emergencies, but shall require strict scrutiny and full enforcement. Successful plaintiffs shall also recover from districts all costs and attorney fees, contingent or not, but defendants only if a suit be found frivolous by a jury.

(2) **Term definitions.** (a) "Ballot title" means all language on a state or local ballot describing a specific petition.

(b) "District" means the state or any local government, including all enterprises, authorities, and other governmental entities.

(c) "Petition" means a citizen-sponsored referendum or initiative on district legislative policy, but not on the application of administrative procedures to specific situations, nor referendum petitions that reduce private property rights, such as zoning issues.

(d) "Shall" means mandatory.

(3) **Petition rights.** (a) Petition rights shall exist in all districts. Required district registered elector petition entries shall not exceed 5% of all district votes for secretary of state candidates in the last full-term election for that office. The general assembly may lower that level. Any review and com-ment hearing shall be held within 7 days of submission of an initiative draft. Initiative ballot titles shall not exceed 75 words, shall be set within 7 days of a request, and may also be set by any state district court. No summary or fiscal notes shall be set. Such ballot titles and all challenges to initiatives on single-subject grounds shall be appealed to the supreme court only within 5 days of the setting finally decided only within 14 days of the appeal, and broadly construed to aid initiatives. If the supreme court does not timely decide the petition is multiple subjects, it is conclusively a single subject. No later single-subject challenge is legal. Any petition adding, repealing, or rewriting within only one article of the constitution, one title of state statutes, one charter article, or one ordinance is conclusively a single subject and not subject to appeal. The foregoing single-subject rules do not apply to voter-approved petitions already ruled by the supreme court to be multiple subjects. Within 7 days of a request for petition forms, districts shall print and deliver them and may charge actual costs up to one dollar per 100–entry form. All districts shall adapt the 1988 state petition forms with no entry space for a county. Errors in petition forms or ballot titles shall not affect petitions. Peaceful petitioning at entries to buildings owned or leased by any district and then open to the public shall be allowed. Except for petition form charges, no petition process fee, card, badge, bond, licensing, or training for petition agents or circulators shall be required. Any adult Colorado resident may circulate any petition, and the use of paid circulators shall create no extra legal duty.

(b) No more than 10 legislative measures passed in a district in any year shall be excepted from possible referendum petitions. An excepted measure and a detailed description of the emergency justifying the exception, shall each be passed by a 3/4ths vote of all members of the local board or of each house of the general assembly. Appropriations for district support are exempt from referendum petitions. Even with an exception, no similar measure shall be fully or partly passed again while a referendum petition on it is in progress. Any state measure not excepted shall take effect 91 days or

more after the general assembly session passing it finally adjourns, and such local measure 91 days or more after post-passage publication. An initial filing of referendum petitions by the 90th day after such event shall delay the effective date until the election or final petition invalidation. Measures rejected by voters shall be void, and similar measures shall be fully or partly re-enacted only with voter approval. Referendum petition ballot titles shall read, "SHALL {DISPUTED SECTIONS OF} (type measure and number only) BE APPROVED?" Such petitions shall have no title-setting, appeal, or single-subject challenge.

(c) Petitions with sufficient gross entries shall be initially filed within 10 months of petition form delivery. Petitions not initially filed 3 months or more before an election shall be filed for the next election. Signers of notarized or verified petitions shall be presumed district registered electors making valid petition entries until disproven by clear and convincing evidence. Minor variations and omissions and technical defects shall be broadly construed to aid petitions. Listing a mailing address shown on the signer's registration record shall be valid. Protests shall be filed within 14 days of petition filing and not amended. Hearings shall be public, limited to reasons itemized in the protest, and use judicial rules of evidence and procedure. Random sampling or machine reading of entries shall be excluded. Petitioners shall

have 14 days after all validation procedures and appeals to file corrections and new petition entries made at any time, to which all validation procedures and appeals shall also apply. Third filings are barred. When initially filed a petition with sufficient gross entries shall receive a ballot number and ballot placement, which remain until all procedures and appeals are decided.

(d) All state and local petitions shall be Article X, Section 20(3) ballot issues voted on at any November election. Petition agents shall be allowed to file up to 500 words for ballot information booklets and election notices sent to addresses of all active registered electors. The length of that filing shall be the maximum for a summary of comments filed by opponents. Districts shall prepare or use no other summary. Election notices and booklets for petitions shall be limited to written comments filed by 45 days before the election and other information required by Article X, section 29(3)(b), which shall apply to all petitions on any subject. All petitions shall be approved only by a simple majority of those voting on the issue. Unless otherwise stated in the text or unless its text be unlawful, a future voter-approved initiative shall remain in effect until changed by voters. Except measures passed by March 1, 2003 and subject to possible referendum petitions, future state or local petition laws, rules, and regulations shall require advance voter approval.

| | | |
|---|---|---|
| Proponents: | Douglas Campbell | 7124 Eldrige Ct. |
| | | Arvada, Colorado [80004] |
| | Dennis Polhill | 49 S. Lookout Mountain Rd. |
| | | Golden, Colorado [80401] |

---

## APPENDIX B

### Ballot Title Setting Board

### Proposed Initiative Number
### 2001–2002 # 43[1]

The title as designated and fixed by the Board is as follows:

An amendment to the Colorado Constitution concerning initiative and referendum petitions, and, in connection therewith, changing petition rights and procedures, extending petition powers to registered voters of all local governments, limiting initiative ballot

1. Unofficially captioned "**Concerning Ballot Petitions**" by legislative staff for tracking purposes.

Such caption is not part of the titles set by the Board.

titles to 75 words, changing single subject requirements as applied to initiatives, establishing standards for review of filed petitions, limiting the annual number of new laws that governments may exclude from possible referendum petitions, specifying that petitions may be voted upon at any November election, requiring voter approval for future petition laws and rules and for changes to certain voter-approved petitions, and authorizing lawsuits and other measures to enforce the amendment.

The ballot title and submission clause as designated by the Board is as follows:

Shall there be an amendment to the Colorado Constitution concerning initiative and referendum petitions, and, in connection therewith, changing petition rights and procedures, extending petition powers to registered voters of all local governments, limiting initiative ballot titles to 75 words, modifying single subject requirements as applied to initiatives establishing standards for review of filed petitions, limiting the annual number of new laws that governments may exclude from possible referendum petitions, specifying that petitions may be voted upon at any November election, requiring voter approval for future petition laws and rules and for changes to certain voter-approved petitions and authorizing lawsuits and other measures to enforce the amendment?

Hearing January 16, 2002:

Single subject approved; staff draft amended; titles set.

Hearing adjourned 5:24 p.m.

Rehearing February 6, 2002:

Motions for rehearing submitted by Mr. Jones and Mr. Grueskin *denied* (both as to single subject objections and objections to titles previously set).

Motion for rehearing submitted by proponents *granted* to extent Board further amended titles.

Rehearing adjourned 3:48 p.m.

**Be it Enacted by the People of the State of Colorado Article VII, Section 2 Petitions.**

**(1) General provisions.** This section shall create fundamental rights and strengthen citizen control, of government. It shall be self-executing and severable and supersede conflicting constitutional, statutory, charter, or other state or local laws. Time limits shall be delayed only to expire on a district business day. The state shall enforce compliance by all districts. Individual and class action suits shall be filed within one year of a violation. Plaintiffs may require a jury trial verdict on all matters of law, fact, and damages. Violations shall not void petitions. Violations shall not be balanced or harmonized, nor excused by substantial compliance, good faith, or emergencies, but shall require strictest scrutiny and full enforcement. Successful plaintiffs shall also recover from defendant districts all costs and attorney fees, contingent or not, but defendants who are not petitioners shall recover only if a suit be found frivolous by a jury.

**(2) Term definitions.** (a) "Ballot title" means all language on a state or local ballot describing a specific petition.

(b) "District" means the state and any local government including all enterprises, authorities, and other governmental entities.

(c) "Petition" means a citizen-sponsored referendum or initiative on district legislative policy, but not the application of administrative procedures to specific situations, nor referendum petitions that reduce private property rights, such as zoning issues.

(d) "Shall" means mandatory.

**(3) Petition rights.** (a) Petition rights shall exist in all districts. Required district registered elector petition entries shall not exceed 5% of all district votes for secretary of state candidates in the last full-term general election for that office. The general assembly may lower that number. Any review and comment hearing shall be held within 7 days of submission of an initiative draft. Initiative ballot titles shall not exceed 75 words, shall be set within 7 days of a request, and may also be set by any state

district court. No summary or fiscal note shall be set. Such ballot titles and all challenges to initiatives on single-subject grounds shall be appealed to the supreme court within 5 days of the setting, finally decided within 14 days of the appeal, and broadly construed to aid initiatives. If not finally decided within 14 days the petition is conclusively a properly-titled single subject. No later single-subject challenge shall be legal. Any petition adding, repealing, or revising within only one article of the constitution, one title of state statutes, one charter article, or one ordinance is conclusively a single subject and not subject to appeal. No single-subject rule in (3)(a) shall apply to changing voter-approved petitions already ruled by the supreme court to be multiple subjects. Within 7 days of a request for petition forms, districts shall print and deliver them may charge actual costs up to one dollar per 100–entry form. All districts shall adapt the 1988 state petition forms with no entry space for a county. Errors in petition forms or ballot titles shall not affect petitions. Peaceful petitioning at entries to buildings owned or leased by any district and then open to the public shall be allowed. Except for petition form charges, no petition process fee, card, badge, bond, licensing, or training for petition agents or circulators shall be required. Any adult Colorado resident may circulate any petition. Using paid circulators shall create no extra legal duty.

(b) No more than 10 legislative measures passed in a district in any year shall be excepted from possible referendum petitions. An excepted measure, and a detailed description of the emergency justifying the exception, shall each be passed by a 3/4ths vote of all members of the elected local board or of each house of the general assembly. Appropriations for district support are exempt from referendum petitions. State measures not excepted shall take effect 91 days or more after the general assembly session passing it finally adjourns, and such local measures 91 days or more after post-passage publication. Initial filing of referendum petitions by the 90th day after such event shall delay the effective date until the election or final petition invalidation. Measures rejected by voters shall be void, and measures wholly or partly similar passed again only with voter approval. Referendum petition ballot titles shall read, "SHALL, {DISPUTED SECTIONS OF} (type of measure and number only) BE APPROVED?" Referendum petitions may begin at any time. They shall have no title-setting, appeal, or single-subject challenge, nor include the measure's text.

(c) Within 10 months of petition form delivery, petitions shall be initially filed with sufficient gross entries. Petitions not initially filed 3 months or more before an election may be filed for the next election. Signers of notarized or verified petitions shall be presumed district registered electors making valid petition entries until disproven in a protest by clear and convincing evidence. Technical defects and minor variations and omissions shall be broadly construed to aid petitions. Listing a mailing address shown on the signer's registration record shall be valid. Protests shall be filed within 14 days of petition filing and not amended. Hearings shall be public, limited to reasons itemized in the protest, and use judicial rules of evidence and procedure. Random sampling and machine reading of entries shall be excluded. Petitioners shall have 14 days after all validation procedures and appeals to refile with corrections and new petition entries made at any time, to which all validation procedures and appeals shall also apply. Third filings are barred. When initially filed, a petition with sufficient gross entries shall receive a ballot number and ballot placement, which remain through all procedures and appeals.

(d) All state and local petitions on any subject shall be Article X, Section 20(3) ballot issues voted on at any November election. Petition agents may file up to 500 words for ballot information booklets and election notices sent to addresses of all active registered electors. The length of that filing shall be the maximum for a summary of comments filed by opponents. Districts shall prepare or use no other summary. For petitions, election notices and booklets shall be limited to written comments filed by 45 days before the election and other information required by Article X, section 20(3)(b). Unless otherwise stated in its text or unless its text be unlawful, a future voter-approved initiative

shall remain in effect until changed by voters. Except measures passed by March 1, 2003 and subject to possible referendum petitions, future state or local petition laws, rules and regulations shall require advance voter approval.

Proponents: Douglas Campbell

Dennis Polhill

7124 Eldrige Ct.
Arvada, Colorado [80004]
49 S. Lookout Mountain Rd.
Golden, Colorado [80402]

