In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE FOR 2003–2004 # 32 & # 33 and Failure to Set Title for 2003–2004 # 21 & # 22.

Douglas Campbell and Dennis Polhill, Petitioners,

v.

William Hobbs, Alan J. Gilbert and Charles Pike, Title Board, Respondents.

In the Matter of the Title, Ballot Title and Submission Clause for 2003–2004 # 32 & # 33.

Donald J. Ryan, Petitioner,

v.

Douglas Campbell and Dennis Polhill, Respondents,

and

William Hobbs, Alan J. Gilbert and Charles Pike, Title Board.

Nos. 03SA115, 03SA116.

Supreme Court of Colorado, En Banc.

Sept. 8, 2003.

Donald J. Ryan, pro se, Wheat Ridge, Colorado.

Douglas Campbell and Dennis Polhill, pro se, Arvada, Colorado.

Ken Salazar, Attorney General, Maurice G. Knaizer, Deputy Attorney General, Denver, Colorado, Attorneys for the Title Board.

Chief Justice MULLARKEY delivered the Opinion of the Court.

These appeals pursuant to section 1–40–107(2), 1 C.R.S. (2002), challenge the actions of the title board ("the board") setting the title, ballot title, submission clause, and summary (collectively, "the title") for proposed initiatives 2003–04 # 32 ("# 32") and 2003–04 # 33 ("# 33"); and refusing to set titles for proposed initiatives 2003–04 # 21 ("# 21") and 2003–04 # 22 ("# 22").[1]

We hold that # 21, # 22, # 32, and # 33 all contain multiple subjects in violation of article V, section 1(5.5) of the Colorado Constitution. Accordingly, with respect to # 21 and # 22, we affirm the action of the board refus-

1. The proposed measures are attached as AP-      PENDIX A, B, C, and D, respectively.

ing to set the titles. With respect to # 32 and # 33, we reverse the action of the board and remand this matter to the board with directions to strike the titles and return the initiatives to the proponents. Because we find that all four measures contain multiple subjects, we do not consider whether the titles set by the board conform to the requirements of section 1–40–106(3).

## I. Facts and Procedural History

Each of the proposed initiatives would add a new section entitled "Petitions" to article VII, the "Suffrage and Elections" article of the Colorado Constitution. Much of the language in the four measures is identical. The dispute centers on a sentence in subsection 3(a) of # 21 and # 22, which states: "Except on courts, lawyers shall not be ballot title setters" ("the attorney provision"). By a vote of 2–1, the board refused to set titles for # 21 and # 22, finding that the measures contained multiple subjects. Board member Alan J. Gilbert concluded that the attorney provision addressed a separate subject because it imposed a limit on the authority of the Attorney General. Board member William Hobbs concurred with Gilbert on the attorney provision, and he also would have found additional subjects in other parts of the initiatives.

In # 32 and # 33, Gilbert's single subject concerns were addressed. The attorney provision was changed to read: "Except on courts, lawyers *other than the Colorado attorney general in person* shall not be ballot title setters" (emphasis added). Subsequently, the board voted 2–1 to set titles for # 32 and # 33, with Gilbert now finding only a single subject and Hobbs again finding multiple subjects.

## II. Analysis

■ Under article V, section 1(5.5) of the Colorado Constitution, no initiative can be proposed or enacted that contains more than one subject. Colo. Const. art. V, § 1(5.5). To violate the single subject requirement, an initiative must: 1) "relate to more than one subject" and 2) have "at least two distinct and separate purposes which are not dependent upon or connected with each other." *In*

*re Public Rights in Waters II,* 898 P.2d 1076, 1078–79 (Colo.1995).

We need not discuss the development and application of this test in detail here because we have done so in three recent cases that address earlier versions of the initiatives now before us. *See In re Proposed Initiative 2001–02 # 43,* 46 P.3d 438 (Colo.2002) ("*# 43* "); *In re Proposed Petition to Add Section 2 of Article VII to the Colorado Constitution,* 907 P.2d 586 (Colo.1995) ("*Petition Procedures II* "); *In re Proposed Petition to Add Section 2 of Article VII to the Colorado Constitution,* 900 P.2d 104 (Colo. 1995) ("*Petition Procedures I* "). The initiatives at issue in both *# 43* and *Petition Procedures I* contained multiple subjects, and the initiative involved in *Petition Procedures II* did not.

We described the initiative in *Petition Procedures II* as having a "single, if quite general, subject." *Petition Procedures II,* 907 P.2d at 590. It proposed a "battery" of procedures governing the exercise of the right of initiative and referendum. *Id.* at 590–91; *see also # 43,* 46 P.3d at 444.

In *Petition Procedures I,* we found several subjects. In addition to changing the initiative and referendum procedures, the proposal also addressed recall rights. It retroactively created fundamental rights in all constitutional and charter initiatives adopted after 1990, and redefined terms used in those initiatives. *Petition Procedures I,* 900 P.2d at 109.

In *# 43,* we examined each challenged provision to determine if it was a procedural change directly related to the central purpose of the initiative. Relying on *Petition Procedures I,* we described the central purpose of the initiative as "liberalizing the process by which initiative and referendum petitions are placed on the ballot...." *# 43,* 46 P.3d at 444. We found three provisions that were not directly related to that central purpose. These were provisions: eliminating the single subject requirement; prohibiting the repeal of article X, section 20 of the constitution by a single initiative; and prohibiting referendum petitions that reduce property rights. *Id.* at 448.

As in # 43, the purpose of initiatives # 21, # 22, # 32, and # 33 is to liberalize the procedure for initiative and referendum petitions. All four of the initiatives are substantially similar, and all four state in subsection (1) that the purpose is "to create fundamental rights to strengthen citizen control of government."[2] The attorney provision in subsection (3)(a) of # 21 and # 22, however, prohibits any attorney from participating as a member of the title board. Subsection (3)(a) of # 32 and # 33 contains the same provision, but exempts the Attorney General from the prohibition.

The General Assembly established the title board "to designate and fix" a title "for each proposed law or constitutional amendment" that will appear on the ballot. § 1–40–106(1), 1 C.R.S. (2002). The members of the board are "the secretary of the state, the attorney general, and the director of the office of legislative legal services or the director's designee." *Id.*

In the cases now before us, a majority of the board reasoned that the attorney provision included in # 21 and # 22 ("Except on courts, lawyers shall not be ballot title setters.") created a separate subject because it was not procedural in nature. Rather, it created a substantive restriction on the power of the Attorney General who, under the constitution, must be an attorney and has such duties as are provided by the constitution and laws of the state. Colo. Const. art. IV, §§ 4 and 1(1). Under the attorney provision, the Attorney General could neither be a member of the title board nor delegate those duties to an attorney.

Although we agree that the attorney provision creates an additional subject, we base our reasoning on broader grounds. We acknowledge that the attorney provision would restrict the powers and duties of the Attorney General. It also limits the powers and duties of the Secretary of State and the General Assembly to designate who will serve as the other two members of the title board.

▪ More generally and perhaps more importantly, however, the provision also limits the substantive rights of *all attorneys*. By foreclosing any possibility that an attorney could serve on the title board, these initiatives restrict the political rights of all attorneys. Under our prior decisions, this exclusion from the political process is a substantive matter, not a procedural change to the petitions process. *See Evans v. Romer*, 854 P.2d 1270 (Colo.1993), *cert. denied*, 510 U.S. 959, 114 S.Ct. 419, 126 L.Ed.2d 365 (1993).

In *Evans v. Romer*,[3] we held that participation in the political process is not only a substantive right, but a fundamental right under the U.S. Constitution, which warrants the strictest judicial review when it is impeded. *Id.* at 1276 ("The right of citizens to participate in the process of government is a core democratic value which has been recognized from the very inception of our Republic up to the present time."). The U.S. Supreme Court has frequently held that participation in the political process includes the right to cast an effective vote and the right to be included on a ballot. *See generally id.* at 1276–80. In *Evans v. Romer*, we interpreted those rights to cover situations in which one specifically identifiable group of individuals is prohibited from seeking to enact protective legislation. *Id.* at 1283.

In the case at hand, the four initiatives propose that a specifically identifiable group, lawyers, be excluded from the ballot title board. Although this provision is much more limited than the exclusion in *Evans v. Romer*, it does affect the substantive rights of

---

**2.** The initiatives propose changes to the initiative process such as: setting a maximum number of votes required for petition entries; limiting the title length to seventy-five words; expediting the deadlines for title setting and appealing the title board's decisions; standardizing the petitioning forms; limiting the permissible fees for petitions; restricting the number of legislative measures that can be exempt from possible referendum petitions, etc.

**3.** In *Evans v. Romer*, we upheld a preliminary injunction barring enforcement of a voter-initiated amendment to the Colorado Constitution, which prohibited the legislature from granting protected status to homosexuals, lesbians, or bisexuals. *Evans v. Romer*, 854 P.2d at 1272. The *Romer* plaintiffs were "fenced out" of all usual political routes for redressing their grievances other than successfully pursuing a constitutional amendment. *Id.* at 1282.

attorneys to participate in the political process. It has no necessary or proper connection to the purpose of the proposed measures, i.e., to liberalize the *procedure* for initiative and referendum petitions. We make no prediction as to whether excluding lawyers from the title board is constitutional, but at the very least, this exclusion is a substantive change in the law that should be separately addressed by the voters. Because these proposed measures would affect existing substantive rights in addition to the primary subject concerning the procedural mechanisms of the initiative and referendum process, # 21 and # 22 do not comply with the single subject requirement. Therefore, we affirm the board's decision to refuse to set titles for # 21 and # 22 on single subject grounds.

Under our broader analysis, proposed measures # 32 and # 33 also unlawfully contain multiple subjects because these measures still substantively prohibit all attorneys—other than the Attorney General—from participating in the political process via serving on the title board. Thus, we reverse the decision of the board with respect to these two titles.

### III. Conclusion

Because initiatives # 21, # 22, # 32, and # 33 contain multiple purposes that are not dependent on or connected to each other, the proposed initiatives violate the single subject provision of article V, section 1(5.5) of the Colorado Constitution. Thus, the board was correct in refusing to set titles for # 21 and # 22 and erred in setting titles for # 32 and # 33. We remand this matter to the board with directions to strike the titles for # 32 and # 33 and to return the four initiatives to the proponents.

Justice COATS dissents, and Justice KOURLIS joins in the dissent.

### APPENDIX A

Be it Enacted by the People of the State of Colorado

Article VII, Section 2

Petitions.

2003–2004: # 21

(1) General provisions. This section shall create fundamental rights to strengthen citizen control of government. It shall be self-executing and severable and supersede conflicting constitutional, charter, and other state and local laws. Time limits shall be delayed only to expire on district business days. The state shall enforce strictest compliance with this section by all districts. All individual and class action suits shall be filed within one year of violations. Plaintiffs may require jury trial verdicts on all matters of law, fact, and damages. District violations shall not void petitions, nor be balanced or harmonized, nor excused by substantial compliance, good faith, ignorance, or emergencies, but shall require strictest scrutiny and full enforcement. Successful plaintiffs shall also recover from defendant districts and (3)(d) violators all costs and attorney fees, contingent or not, but defendants who are not petition agents may recover only if juries find suits frivolous.

(2) Definitions. Within this section: (a) "Ballot titles" means all language on ballots describing specific petitions.

(b) "Districts" means the state and all local governments, including enterprises, authorities, and other governmental entities.

(c) "Petitions" means citizen-sponsored referenda and initiatives on legislative policy, not on specific uses of administrative procedure.

(d) "Shall" means mandatory.

(3) Petition rights. (a) Petition rights shall exist in all districts. Required district registered elector petition entries shall not exceed 5% of all district votes for secretary of state candidates in the last full-term general election for that office. The general assembly may reduce that number for proposed statutes. Any review and comment hearing shall be held within 7 days of filing initiative drafts. Initiative ballot titles shall not exceed 75 words, shall be set within 7 days of requests made at any time, and may also be set by any state district court. Except on courts, lawyers shall not be ballot title setters. Ballot title setters shall also be disqualified for bias or other good cause. Fu-

ture local single-subject requirements shall exist by voter-approved petitions only. No summary or fiscal note shall be made at ballot title settings. Ballot title disputes and all single-subject challenges shall be filed with the supreme court within 5 days of such settings, finally decided within 7 days of filings, and very broadly construed to aid initiatives. Unless otherwise decided within 7 days of filings, initiatives shall conclusively be properly-titled single subjects. Decisions that initiatives contain multiple subjects shall list in writing all words not part of single subjects. Revisions that delete those words, and add no others, shall conclusively be single subjects. Decisions shall also provide ballot titles for initiatives and revisions. No other ballot title or single-subject rehearing, appeal, challenge, or decision shall be made. Within 7 days of requests for petition forms, districts shall print and deliver them and may charge actual costs up to one dollar per 100–entry form. All districts shall adapt the 1988 state petition forms without county entry spaces. Errors in petition forms or ballot titles shall not affect petitions. Peaceful petitioning at exits of buildings owned or leased by any district and then open to the public shall be protected. Except for petition form charges, no petition process fee, badge, bond, licensing, or training for petition agents or circulators shall be required. Any adult in Colorado may circulate any petition. Using paid circulators shall create no extra legal duty.

(b) In each district, no more than 10 legislative measures passed each year shall be excepted from possible referendum petitions. Excepted measures, and detailed descriptions of emergencies justifying exceptions, shall each be passed by 3/4ths or more of all members of the elected local board or of each house of the general assembly. State measures not excepted shall take effect 91 days or more after the general assembly session passing them finally adjourns, and such local measures 91 days or more after post-passage publication. Initial filing of referendum petitions with sufficient gross entries before that 91st day shall delay the effective date until the election or final petition invalidation.

Measures rejected by voters shall then be void, and measures wholly or mostly similar shall then be passed again with voter approval only. Referendum petition ballot titles shall read, "SHALL (DISPUTED SECTIONS OF) (types of measures and numbers only) BE APPROVED?" Referendum petitions may begin at any time. They shall have no ballot title setting, appeal, or single-subject challenge, nor print texts of measures on petition forms. Only appropriations for district support are exempt from referendum petitions. This section shall not apply to referendum petitions reducing private property rights, such as zoning issues, which petitions may still lawfully exist.

(c) Within 12 months of petition form delivery, petitions shall be initially filed with sufficient gross entries. Petitions not initially filed 3 months or more before elections may be filed for the next election. Signers of petitions later notarized or verified shall be presumed district registered electors making valid entries until disproved in protests by clear and convincing evidence. Technical defects and minor variations and omissions shall be very broadly construed to aid petitions. Listing mailing addresses shown on registration records shall be valid. All protests shall be filed within 10 days of petition filings and not amended. Hearings shall be public, limited to reasons itemized in protests, and decided within 10 days of protest filings, using state judicial rules of evidence and procedure. Results of random sampling or machine reading of entries shall be excluded. Each protested entry shall be examined separately at the hearing. If districts do not review equally all petitions before elections, no district review results shall be used to invalidate any such petition. Petitioners shall have 10 days after all validation procedures and appeals to refile with corrections and added petition entries made at any time, to which all procedures and appeals shall also apply. Third filings are barred. When initially filed, petitions with sufficient gross entries shall receive ballot numbers and ballot placement, which remain through all procedures and appeals.

(d) All state and local petitions on any subject shall be Article X, section 20(3) ballot

issues at any November election. Petition agents may file up to 1,000 words for ballot information booklets and election notices sent to all active registered elector addresses. The length of such filings shall be the maximum for summaries of comments filed by opponents. For petitions, those booklets and notices shall be limited to such written comments filed by 45 days before elections and other information required by Article X, section 20(3)(b). Article V, section 1(7.5)(a)(II) and the last sentence of Article X, section 20(3)(b)(v) shall not apply to petitions. Except for court cases, or petition or election procedures and materials required by law, no public resources shall be spent to comment on pending petitions after ballot titles are set, and no district shall prepare or use another summary or otherwise comment on such petitions. No public resources shall be spent to defend accused violators or reimburse fines. Each district and each other violator shall separately pay the state general fund at once, without offset, the greater of $2,000 or three times all such illegally-spent public resources. Unless otherwise stated in their texts or unless their texts be unlawful, future voter-approved initiatives shall be in effect until changed by voters. This section may be amended, superseded, or repealed by voter-approved petitions only. Except for state statutes subject to possible referendum petitions and enacted by March 1, 2005, all future state and local petition laws, rules, and regulations shall be Article X, section 20(3) ballot issues at any November election.

### APPENDIX B

Be it Enacted by the People of the State of Colorado

Article VII, Section 2

Petitions.

2003–2004: # 22

(1) General provisions. This section shall create fundamental rights to strengthen citizen control of government. It shall be self-executing and severable and supersede conflicting constitutional, charter, and other state and local laws. Time limits shall be delayed only to expire on district business days. The state shall enforce strictest compliance with this section by all districts. All individual and class action suits shall be filed within one year of violations. Plaintiffs may require jury trial verdicts on all matters of law, fact, and damages. District violations shall not void petitions, nor be balanced or harmonized, nor excused by substantial compliance, good faith, ignorance, or emergencies, but shall require strictest scrutiny and full enforcement. Successful plaintiffs shall also recover from defendant districts and (3)(d) violators all costs and attorney fees, contingent or not, but defendants who are not petition agents may recover only if juries find suits frivolous.

(2) Definitions. Within this section: (a) "Ballot titles" means all language on ballots describing specific petitions.

(b) "Districts" means the state and all local governments, including enterprises, authorities, and other governmental entities.

(c) "Petitions" means citizen-sponsored referenda and initiatives on legislative policy, not on specific uses of administrative procedure.

(d) "Shall" means mandatory.

(3) Petition rights. (a) Petition rights shall exist in all districts. Required district registered elector petition entries shall not exceed 5% of all district votes for secretary of state candidates in the last full-term general election for that office. The general assembly may reduce that number for proposed statutes. Any review and comment hearing shall be held within 7 days of filing initiative drafts. Initiative ballot titles shall not exceed 75 words, shall be set within 7 days of requests made at any time, and may also be set by any state district court. Except on courts, lawyers shall not be ballot title setters. Ballot title setters shall also be disqualified for bias or other good cause. Future local single-subject requirements shall exist by voter-approved petitions only. No summary or fiscal note shall be made at ballot title settings. Ballot title disputes and all single-subject challenges shall be filed with the supreme court within 5 days of such settings, finally decided within 7 days of filings, and very broadly construed to aid initiatives. Unless otherwise decided within 7 days of filings, initiatives shall conclusively

be properly-titled single subjects. Decisions that initiatives contain multiple subjects shall list in writing all words not part of single subjects. Revisions that delete those words, and add no others, shall conclusively be single subjects. Decisions shall also provide ballot titles for initiatives and revisions. No other ballot title or single-subject rehearing, appeal, challenge, or decision shall be made. Within 7 days of requests for petition forms, districts shall print and deliver them and may charge actual costs up to one dollar per 100–entry form. All districts shall adapt the 1988 state petition forms without county entry spaces. Errors in petition forms or ballot titles shall not affect petitions. Peaceful petitioning at exits of buildings owned or leased by any district and then open to the public shall be protected. Except for petition form charges, no petition process fee, badge, bond, licensing, or training for petition agents or circulators shall be required. Any adult in Colorado may circulate any petition. Using paid circulators shall create no extra legal duty.

(b) In each district, no more than 10 legislative measures passed each year shall be excepted from possible referendum petitions. Excepted measures, and detailed descriptions of emergencies justifying exceptions, shall each be passed by 3/4ths or more of all members of the elected local board or of each house of the general assembly. State measures not excepted shall take effect 91 days or more after the general assembly session passing them finally adjourns, and such local measures 91 days or more after post-passage publication. Initial filing of referendum petitions with sufficient gross entries before that 91st day shall delay the effective date until the election or final petition invalidation. Measures rejected by voters shall then be void, and measures wholly or mostly similar shall then be passed again with voter approval only. Referendum petition ballot titles shall read, "SHALL (DISPUTED SECTIONS OF) (types of measures and numbers only) BE APPROVED?" Referendum petitions may begin at any time. They shall have no ballot title setting, appeal, or single-subject challenge, nor print texts of measures on petition forms. Only appropriations for district support are exempt from referendum petitions.

(c) Within 12 months of petition form delivery, petitions shall be initially filed with sufficient gross entries. Petitions not initially filed 3 months or more before elections may be filed for the next election. Signers of petitions later notarized or verified shall be presumed district registered electors making valid entries until disproved in protests by clear and convincing evidence. Technical defects and minor variations and omissions shall be very broadly construed to aid petitions. Listing mailing addresses shown on registration records shall be valid. All protests shall be filed within 10 days of petition filings and not amended. Hearings shall be public, limited to reasons itemized in protests, and decided within 10 days of protest filings, using state judicial rules of evidence and procedure. Results of random sampling or machine reading of entries shall be excluded. Each protested entry shall be examined separately at the hearing. If districts do not review equally all petitions before elections, no district review results shall be used to invalidate any such petition. Petitioners shall have 10 days after all validation procedures and appeals to refile with corrections and added petition entries made at any time, to which all procedures and appeals shall also apply. Third filings are barred. When initially filed, petitions with sufficient gross entries shall receive ballot numbers and ballot placement, which remain through all procedures and appeals.

(d) All state and local petitions on any subject shall be Article X, section 20(3) ballot issues at any November election. Petition agents may file up to 1,000 words for ballot information booklets and election notices sent to all active registered elector addresses. The length of such filings shall be the maximum for summaries of comments filed by opponents. For petitions, those booklets and notices shall be limited to such written comments filed by 45 days before elections and other information required by Article X, section 20(3)(b). Article V, section 1(7.5)(a)(II) and the last sentence of Article X, section 20(3)(b)(v) shall not apply to petitions. Ex-

cept for court cases, or petition or election procedures and materials required by law, no public resources shall be spent to comment on pending petitions after ballot titles are set, and no district shall prepare or use another summary or otherwise comment on such petitions. No public resources shall be spent to defend accused violators or reimburse fines. Each district and each other violator shall separately pay the state general fund at once, without offset, the greater of $2,000 or three times all such illegally-spent public resources. Unless otherwise stated in their texts or unless their texts be unlawful, future voter-approved initiatives shall be in effect until changed by voters. This section may be amended, superseded, or repealed by voter-approved petitions only. Except for state statutes subject to possible referendum petitions and enacted by March 1, 2005, all future state and local petition laws, rules, and regulations shall be Article X, section 20(3) ballot issues at any November election.

## APPENDIX C

Be it Enacted by the People of the State of Colorado

Article VII, Section 2

Petitions.

2003–2004: # 32

(1) General provisions. This section shall create fundamental rights to strengthen citizen control of government. It shall be self-executing and severable and supersede conflicting constitutional, charter, and other state and local laws. Time limits shall be delayed only to expire on district business days. The state shall enforce strictest compliance with this section by all districts. All individual and class action suits shall be filed within one year of violations. Plaintiffs may require jury trial verdicts on all matters of law, fact, and damages. District violations shall not void petitions, nor be balanced or harmonized, nor excused by substantial compliance, good faith, ignorance, or emergencies, but shall require strictest scrutiny and full enforcement. Successful plaintiffs shall also recover from defendant districts and (3)(d) violators all costs and attorney fees, contingent or not, but defendants who are

not petition agents may recover only if juries find suits frivolous.

(3) Definitions. Within this section: (a) "Ballot titles" means all language on ballots describing specific petitions.

(b) "Districts" means the state and all local governments, including enterprises, authorities, and other governmental entities.

(c) "Petitions" means citizen-sponsored referenda and initiatives on legislative policy, not on specific uses of administrative procedure.

(d) "Shall" means mandatory.

(3) Petition rights. (a) Petition rights shall exist in all districts. Required district registered elector petition entries shall not exceed 5% of all district votes for secretary of state candidates in the last full-term general election for that office. The general assembly may reduce that number for proposed statutes. Any review and comment hearing shall be held within 7 days of filing initiative drafts. Initiative ballot titles shall not exceed 75 words, shall be set within 7 days of requests made at any time, and may also be set by any state district court. Except on courts, lawyers other than the Colorado attorney general in person shall not be ballot title setters. Ballot title setters shall also be disqualified for bias or other good cause. Future local single-subject requirements shall exist by voter-approved petitions only. No summary or fiscal note shall be made at ballot title settings. Ballot title disputes and all single-subject challenges shall be filed with the supreme court within 5 days of such settings, finally decided within 7 days of filings, and very broadly construed to aid initiatives. Unless otherwise decided within 7 days of filings, initiatives shall conclusively be properly-titled single subjects. Decisions that initiatives contain multiple subjects shall list in writing all words not part of single subjects. Revisions that delete those words, and add no others, shall conclusively be single subjects. Decisions shall also provide ballot titles for initiatives and revisions. No other ballot title or single-subject rehearing, appeal, challenge, or decision shall be made. Within 7 days of requests for petition forms, districts shall print and deliver them and

may charge actual costs up to one dollar per 100–entry form. All districts shall adapt the 1988 state petition forms without county entry spaces. Errors in petition forms or ballot titles shall not affect petitions. Peaceful petitioning at exits of buildings owned or leased by any district and then open to the public shall be protected. Except for petition form charges, no petition process fee, badge, bond, licensing, or training for petition agents or circulators shall be required. Any adult in Colorado may circulate any petition. Using paid circulators shall create no extra legal duty.

(b) In each district, no more than 10 legislative measures passed each year shall be excepted from possible referendum petitions. Excepted measures, and detailed descriptions of emergencies justifying exceptions, shall each be passed by 3/4ths or more of all members of the elected local board or of each house of the general assembly. State measures not excepted shall take effect 91 days or more after the general assembly session passing them finally adjourns, and such local measures 91 days or more after post-passage publication. Initial filing of referendum petitions with sufficient gross entries before that 91st day shall delay the effective date until the election or final petition invalidation. Measures rejected by voters shall then be void, and measure wholly or mostly similar shall then be passed again with voter approval only. Referendum petition ballot titles shall read, "SHALL (DISPUTED SECTIONS OF) (types of measures and numbers only) BE APPROVED?" Referendum petitions may begin at any time. They shall have no ballot title setting, appeal, or single-subject challenge, nor print texts of measures on petition forms. Only appropriations for district support are exempt from referendum petitions. This section shall not apply to referendum petitions reducing private property rights, such as zoning issues, which petitions may still lawfully exist.

(c) Within 12 months of petition form delivery, petitions shall be initially filed with sufficient gross entries. Petitions not initially filed 3 months or more before elections may be filed for the next election. Signers of petitions later notarized or verified shall be presumed district registered electors making valid entries until disproved in protests by clear and convincing evidence. Technical defects and minor variations and omissions shall be very broadly construed to aid petitions. Listing mailing addresses shown on registration records shall be valid. All protests shall be filed within 10 days of petition filings and not amended. Hearings shall be public, limited to reasons itemized in protests, and decided within 10 days of protest filings, using state judicial rules of evidence and procedure. Results of random sampling or machine reading of entries shall be excluded. Each protested entry shall be examined separately at the hearing. If districts do not review equally all petitions before elections, no district review results shall be used to invalidate any such petition. Petitioners shall have 10 days after all validation procedures and appeals to refile with corrections and added petition entries made at any time, to which all procedures and appeals shall also apply. Third filings are barred. When initially filed, petitions with sufficient gross entries shall receive ballot numbers and ballot placement, which remain through all procedures and appeals.

(d) All state and local petitions on any subject shall be Article X, section 20(3) ballot issues at any November election. Petition agents may file up to 1,000 words for ballot information booklets and election notices sent to all active registered elector addresses. The length of such filings shall be the maximum for summaries of comments filed by opponents. For petitions, those booklets and notices shall be limited to such written comments filed by 45 days before elections and other information required by Article X, section 20(3)(b). Article V, section 1(7.5)(a)(II) and the last sentence of Article X, section 20(3)(b)(v) shall not apply to petitions. Except for court cases, or petition or election procedures and materials required by law, no public resources shall be spent to comment on pending petitions after ballot titles are set, and no district shall prepare or use another summary or otherwise comment on such petitions. No public resources shall be spent to defend accused violators or reimburse fines. Each district and each other

violator shall separately pay the state general fund at once, without offset, the greater of $2,000 or three times all such illegally-spent public resources. Unless otherwise stated in their texts or unless their texts be unlawful, future voter-approved initiatives shall be in effect until changed by voters. This section may be amended, superseded, or repealed by voter-approved petitions only. Except for state statutes subject to possible referendum petitions and enacted by March 1, 2005, all future state and local petition laws, rules, and regulations shall be Article X, section 20(3) ballot issues at any November election.

## APPENDIX D

Be it Enacted by the People of the State of Colorado

Article VII, Section 2

Petitions.

2003–2004: # 33

(1) General provisions. This section shall create fundamental rights to strengthen citizen control of government. It shall be self-executing and severable and supersede conflicting constitutional, charter, and other state and local laws. Time limits shall be delayed only to expire on district business days. The state shall enforce strictest compliance with this section by all districts. All individual and class action suits shall be filed within one year of violations. Plaintiffs may require jury trial verdicts on all matters of law, fact, and damages. District violations shall not void petitions, nor be balanced or harmonized, nor excused by substantial compliance, good faith, ignorance, or emergencies, but shall require strictest scrutiny and full enforcement. Successful plaintiffs shall also recover from defendant districts and (3)(d) violators all costs and attorney fees, contingent or not, but defendants who are not petition agents may recover only if juries find suits frivolous.

(2) Definitions. Within this section: (a) "Ballot titles" means all language on ballots describing specific petitions.

(b) "Districts" means the state and all local governments, including enterprises, authorities, and other governmental entities.

(c) "Petitions" means citizen-sponsored referenda and initiatives on legislative policy, not on specific uses of administrative procedure.

(d) "Shall" means mandatory.

(3) Petition rights. (a) Petition rights shall exist in all districts. Required district registered elector petition entries shall not exceed 5% of all district votes for secretary of state candidates in the last full-term general election for that office. The general assembly may reduce that number for proposed statutes. Any review and comment hearing shall be held within 7 days of filing initiative drafts. Initiative ballot titles shall not exceed 75 words, shall be set within 7 days of requests made at any time, and may also be set by any state district court. Except on courts, lawyers other than the Colorado attorney general in person shall not be ballot title setters. Ballot title setters shall also be disqualified for bias or other good cause. Future local single-subject requirements shall exist by voter-approved petitions only. No summary or fiscal note shall be made at ballot title settings. Ballot title disputes and all single-subject challenges shall be filed with the supreme court within 5 days of such settings, finally decided within 7 days of filings, and very broadly construed to aid initiatives. Unless otherwise decided within 7 days of filings, initiatives shall conclusively be properly-titled single subjects. Decisions that initiatives contain multiple subjects shall list in writing all words not part of single subjects. Revisions that delete those words, and add no others, shall conclusively be single subjects. Decisions shall also provide ballot titles for initiatives and revisions. No other ballot title or single-subject rehearing, appeal, challenge, or decision shall be made. Within 7 days of requests for petition forms, districts shall print and deliver them and may charge actual costs up to one dollar per 100–entry form. All districts shall adapt the 1988 state petition forms without county entry spaces. Errors in petition forms or ballot titles shall not affect petitions. Peaceful petitioning at exits of buildings owned or leased by any district and then open to the public shall be protected. Except for petition form charges, no petition process fee,

badge, bond, licensing, or training for petition agents or circulators shall be required. Any adult in Colorado may circulate any petition. Using paid circulators shall create no extra legal duty.

(b) In each district, no more than 10 legislative measures passed each year shall be excepted from possible referendum petitions. Excepted measures, and detailed descriptions of emergencies justifying exceptions, shall each be passed by 3/4ths or more of all members of the elected local board or of each house of the general assembly. State measures not excepted shall take effect 91 days or more after the general assembly session passing them finally adjourns, and such local measures 91 days or more after post-passage publication. Initial filing of referendum petitions with sufficient gross entries before that 91st day shall delay the effective date until the election or final petition invalidation. Measures rejected by voters shall then be void, and measure wholly or mostly similar shall then be passed again with voter approval only. Referendum petition ballot titles shall read, "SHALL (DISPUTED SECTIONS OF) (types of measures and numbers only) BE APPROVED?" Referendum petitions may begin at any time. They shall have no ballot title setting, appeal, or single-subject challenge, nor print texts of measures on petition forms. Only appropriations for district support are exempt from referendum petitions.

(c) Within 12 months of petition form delivery, petitions shall be initially filed with sufficient gross entries. Petitions not initially filed 3 months or more before elections may be filed for the next election. Signers of petitions later notarized or verified shall be presumed district registered electors making valid entries until disproved in protests by clear and convincing evidence. Technical defects and minor variations and omissions shall be very broadly construed to aid petitions. Listing mailing addresses shown on registration records shall be valid. All protests shall be filed within 10 days of petition filings and not amended. Hearings shall be public, limited to reasons itemized in protests, and decided within 10 days of protest

filings, using state judicial rules of evidence and procedure. Results of random sampling or machine reading of entries shall be excluded. Each protested entry shall be examined separately at the hearing. If districts do not review equally all petitions before elections, no district review results shall be used to invalidate any such petition. Petitioners shall have 10 days after all validation procedures and appeals to refile with corrections and added petition entries made at any time, to which all procedures and appeals shall also apply. Third filings are barred. When initially filed, petitions with sufficient gross entries shall receive ballot numbers and ballot placement, which remain through all procedures and appeals.

(d) All state and local petitions on any subject shall be Article X, section 20(3) ballot issues at any November election. Petition agents may file up to 1,000 words for ballot information booklets and election notices sent to all active registered elector addresses. The length of such filings shall be the maximum for summaries of comments filed by opponents. For petitions, those booklets and notices shall be limited to such written comments filed by 45 days before elections and other information required by Article X, section 20(3)(b). Article V, section 1(7.5)(a)(II) and the last sentence of Article X, section 20(3)(b)(v) shall not apply to petitions. Except for court cases, or petition or election procedures and materials required by law, no public resources shall be spent to comment on pending petitions after ballot titles are set, and no district shall prepare or use another summary or otherwise comment on such petitions. No public resources shall be spent to defend accused violators or reimburse fines. Each district and each other violator shall separately pay the state general fund at once, without offset, the greater of $2,000 or three times all such illegally-spent public resources. Unless otherwise stated in their texts or unless their texts be unlawful, future voter-approved initiatives shall be in effect until changed by voters. This section may be amended, superseded, or repealed by voter-approved petitions only. Except for state statutes subject to possible referendum petitions and enacted by March 1, 2005, all future state and local petition laws, rules, and

regulations shall be Article X, section 20(3) ballot issues at any November election.

Justice COATS, dissenting.

With its judgment today, the court blocks from consideration by the voters of this state several initiatives that would alter the process for amending the state constitution and statutes in the future. The majority does so on the grounds that lawyers, as a class, have a "substantive right" of eligibility to serve on the legislatively created ballot title board, and that by excluding all lawyers except the Attorney General from serving on that board, the initiative necessarily extends beyond its primary subject of initiative procedures. Because I disagree that lawyers have such a "substantive right;" that the procedural nature of this initiative would be altered even if they did; and that characterizing certain portions of an initiative as substantive and others as procedural necessarily implies multiple subjects, I respectfully dissent.

For nearly a century, the voters of Colorado have reserved to themselves the right to amend the laws of the state through an initiative or referendum process. *See In re Title, Ballot Title and Submission Clause for 1999–2000 # 25,* 974 P.2d 458, 462 (Colo. 1999). Even after the 1994 constitutional amendment requiring that each initiative be limited to a single subject (as had long been the case for statutes approved by the legislature), the role of this court in the initiative process has remained extremely limited. *See In re Title, Ballot Title Submission Clause for Proposed Initiative 2001–02 # 43,* 46 P.3d 438, 443 (Colo.2002). The court is not a gatekeeper, with the assigned task of screening proposals from the voters for lack of merit, questionable policy choices, or exceeding federal constitutional limitations. At this stage, the court's role is limited to determining whether the board has performed its duty to insure that the proposed initiative contains a single subject and that the titles and submission clause prepared by the board express the initiative's true meaning and intent.

While the single-subject requirement could, on its face, be read to leave great discretion with the reviewing authority, it has been narrowly circumscribed by prior interpretations of the virtually identical limitation on statutes, from which it was derived, *see* Colo. Const. Art. V, § 21, and the General Assembly's own explanation of its intent in referring the measure to the voters in the first place. *See* § 1–40–6.5., 1 C.R.S (2002). Both make clear that the evils to be guarded against are "the passage of unknown and alien subjects, which might be coiled up in the folds of the bill," *In re Breene,* 14 Colo. 401, 404, 24 P. 3, 3–4, (1890), and the practice of joining incongruous subjects to enlist support for measures that could not pass on their individual merits. *See In re Title, Ballot Title and Submission Clause and Summary for 1999–2000 # 25,* 974 P.2d 458, 461 (Colo.1999). While initiatives addressing subjects with no necessary or proper connection to each other should be disallowed, initiatives connected to one another by tending to effect or carry out one general objective or purpose should be allowed as presenting only a single subject. *Id.* at 463. In ruling on a previous incarnation of this very initiative, similarly designed to restructure initiative and referendum procedures, this court found a single subject, despite the inclusion of " 'a battery of procedures which govern the exercise' of the right to petition." *See In re Proposed Initiative for 2001–02 # 43,* 46 P.3d at 444 (quoting *In re Proposed Initiative Petitions,* 907 P.2d 586, 590 (Colo.1995)).

Never before today have we suggested that provisions with both substantive and procedural characteristics or effects are incapable of carrying out one general objective, and therefore of presenting a single subject. We have merely characterized the "substance" of certain initiatives as involving primarily procedural changes and have therefore found multiple subjects where initiatives also contained other substantive matters that were unrelated to those procedural changes. *Petition Procedures,* 900 P.2d 104, 109 (1995) (initiative contained several diverse subjects where it created numerous "fundamental rights" retroactively, "unrelated to any procedural changes"); # *In re Proposed Initiative for 2001–02 # 43,* 46 P.3d at 444–45 (besides procedural changes to initiative process, these initiatives were

intended to achieve three new objectives: modify the *content* of initiatives; prevent the wholesale repeal of TABOR; and bar reduction of certain private property rights). Besides having little relation to the single-subject requirement, the substantive/procedural distinction, as we have noted in other contexts, *see, e.g., People v. McKenna,* 196 Colo. 367, 585 P.2d 275 (1978), is notoriously imprecise and incapable of clear articulation. While it may nevertheless be necessary in certain contexts, no useful purpose is served by importing such a distinction into the single-subject requirement as an additional, judicially-imposed hurdle to popularly-initiated measures.

Unlike our prior findings of a single-subject violation, the majority opinion does not suggest that this proposed initiative includes a purpose unrelated to the procedures governing the initiative and referendum process. And it would seem difficult to construe changes to the composition of the board that is charged with fixing a title and submission clause as being unrelated to the procedures required to advance an initiative to the ballot. Rather, the majority finds that by limiting the composition of the board, the initiative also necessarily affects the rights of individuals who would otherwise have been eligible to sit on it. While this may be true, it in no way injects a subject that is unconnected or unrelated to the procedural changes that are the objective of the initiative. Every procedural change has some effect on the rights of those to whom the procedure applies. But including within these particular initiatives a limitation on lawyer participation at the title-setting stage cannot reasonably be interpreted as a "surreptitious measure" or an attempt to join incongruous measures that could not pass on their own merits, nor does the majority suggest anything of the kind.

Perhaps most significant is the majority's characterization of continued lawyer eligibility to serve on the title board as a "substantive right." The majority strongly suggests, by drawing an analogy to this court's holding in *Evans v. Romer,* 854 P.2d 1270 (Colo. 1993), that lawyers have a fundamental constitutional right to remain eligible for service on the board; and that by depriving them of that opportunity, the proposed measure would violate the due process clause of Fourteenth Amendment by restricting their right "to participate in the political process." Apart from the inappropriateness of excluding a measure from the ballot based on a prediction of its ultimate sustainability, *see In re Proposed Initiatives for 2001–02 # 43,* 46 P.3d at 443, I find the majority's suggestion—that excluding lawyers from the title-setting stage of the initiative process would unconstitutionally restrict their right to participate equally in the political process—to be completely unsupportable, regardless of the level of judicial scrutiny employed. I do not consider limiting the composition of the title board by professional background even remotely comparable to excluding from the electoral process, at any local level, matters of interest to a specific, identifiable group.

Whatever their merits as public policy, rational reasons can clearly be conceived to justify excluding lawyers from this limited aspect of preparing initiatives for the ballot. Even the representative of the Colorado Attorney General objected only to the elimination of the attorney general's seat. The majority's sweeping finding of a "substantive right" of all attorneys, distilled apparently from a right of citizens to participate in the political process generally, finds no support in our prior single-subject jurisprudence. I would reject the majority holding and limit the role of the single-subject requirement to that intended when it was referred to the voters.

Because neither the majority of the board, in rejecting ## 21 and 22, nor the majority of this court, in affirming the approval of ## 32 and 33, has supported its conclusions with what I believe to be an acceptable ground for finding multiple subjects, I would reverse the board's decisions on ## 21 and 22, and affirm on ## 32 and 33. I therefore respectfully dissent.

Justice KOURLIS joins in the dissenting opinion.